ROMIG ET AL., APPELLEES, *v.* MODEST ET AL., APPELLANTS.

(No. 2391—Decided December 14, 1956.)

*Messrs. Beigel & Mahrt* and *Mr. Jack E. Staley,* for appellees.

*Mr. Charles A. Funkhouser,* for appellants.

WISEMAN, J. This is an appeal on questions of law and fact from a judgment of the Common Pleas Court of Montgomery County granting a mandatory injunction requiring defendants to remove a fence erected on their lot.

This is a suit in equity and is in this court *de novo.* By stipulation, the record taken below is submitted as the evidence in this court.

The action involves the enforcement of a restrictive covenant in a deed. The petition alleges that plaintiffs and defendants are the owners of adjoining lots on the First Addition to Hills-Dale Plat, Montgomery County, Ohio. The plat is subdivided into 53 lots. The plat contains certain restrictions, and the deeds to the lot owners contain the identical restrictions. Restrictive covenant No. 9 is as follows:

"No fences of any kind except hedge fences of not over thirty (30) inches in height shall be erected or maintained on said premises nearer to the line of any street abutting thereon than the 'Building Lines' herein referred to. No fence, except shrubbery or hedge fences, shall be erected anywhere on said premises except that trellises may be built to support vines provided they are not built nearer to the line of any street abutting thereon than the 'Building Lines' herein referred to."

The petition alleges further that defendants erected and maintain a wire fence on their lot and that the fence was not a trellis built to support vines. Plaintiffs claim they have no adequate remedy at law.

Defendants, in their answer, admit all material allegations in plaintiffs' petition, but set up an affirmative defense to the effect that the enforcement of the covenant has been waived by reason of the fact that owners of lots on the plat over the years have erected and do now maintain fences on their lots in violation of the terms of the covenant and without objection on the part of the plaintiffs, and that a strict enforcement of the covenant has been waived or abandoned by mutual consent of the lot owners. Plaintiffs filed a reply denying the allegations in the answer constituting the special defense.

The defendants received a deed to their lot in October 1945, and the plaintiffs received their deed in November 1950. In the month of April 1955, the defendants enclosed their rear yard by erecting a wire fence on the rear lot line, and also on the side lot lines extending from the rear lot line to the rear of defendants' residence. The corner posts, intermediate posts and braces are metal. The fence is the usual height and has much of the appearance of a farm fence, except the top is scal-

loped. The defendants erected the fence, although warned by plaintiffs prior to its erection that it violated the terms of the restrictive covenant and that they objected to its erection. Most of the evidence had to do with the existence of other fences on other lots on the plat, which had been erected over a period of years. The evidence shows that at least 14 lots of the 53 on the plat have fences of some description—wire, wood, picket or split rail, some painted and others unpainted, some very low and others the usual height, some conspicuous and others obscured by being covered with vines or shrubbery. Most of the fences are of the split rail type, existing on the rear lot lines. There are no alleys separating the rear of the lots.

Prior to the erection of defendants' fence, there was an unobstructed view afforded plaintiffs over the rear yards of a tier of six lots. A portion of the area is hilly and rugged, and a studied effort has been made by the lot owners to maintain the rustic beauty of the surroundings. The split rail or split post type of fence does not detract from the rustic beauty of the addition. In addition to defendants' wire fence, three other wire fences exist; one a low ornamental, another a high ornamental, and another an open-wire fence partially obscured by vines and shrubbery. The wire fence erected by the defendants is wholly out of harmony with the architectural scheme and the landscaping of the area.

It is conceded that the erection of a fence is a violation of the covenant. Some of the fences erected are what may be described as technical or trivial violations and others constitute substantial violations.

The fences on three lots are observable from plaintiffs' lot; other fences are not. However, the plaintiffs are chargeable with notice of all fences erected in the addition. The plaintiffs had actual knowledge of the existence of many of the fences and would have constructive notice of all others. Plaintiffs had sufficient facts to put them upon inquiry. 30 Ohio Jurisprudence, 225, 235, Sections 19 and 29.

Plaintiffs contend that they have not waived their right to have the covenant enforced with respect to properties abutting or in close proximity to their property, and that, with a few exceptions, they could not observe from their lot any violations

of the covenant on property remotely situated. Defendants contend that the restriction has long since been abandoned or waived by common consent of the owners of lots on the plat by reason of the construction of fences of all kinds, shapes and sizes in violation of the covenant, which were in existence many years before defendants erected their fence.

The plaintiffs assert that they have the right to claim the benefit of the restriction so long as it has been substantially observed on lots within view of plaintiffs' lot, in order to preserve the character of the immediate neighborhood as intended when the subdivision was originally platted, even though such restriction may have been violated in some cases in other remote portions of the plat. On the contrary, defendants claim that the violations are so numerous and so wide spread throughout the plat, and on lots in close proximity to plaintiffs' lot, that plaintiffs must be held to have acquiesced or consented to the abandonment or waiver of such restriction.

The motive which prompted the defendants to erect the fence (to prevent dogs and children getting on their rear yard) is inconsequential and of no legal effect in resolving the issue.

Upon request of counsel that the court inspect the property, the writer of this opinion did make such inspection. The front yard fence has been removed, there being no fence of any description in front of that residence.

Hills-Dale Plat (first addition) abuts for a distance of approximately 650 feet on the west side of Far Hills Avenue which extends in a northerly and southerly direction. The entrance to the plat is by way of Pelham Drive, which is in the center of the plat. About 150 feet west of Far Hills Avenue, Pelham Drive divides into Pelham Drive North and Pelham Drive South, the two drives extending about the distance of one long square in a westerly direction to Lenox Drive which intersects at right angles and forms the western boundary of the plat. Lenox Drive is not cut through, and the two Pelham Drives come to a dead end at Lenox Drive. The lots lie on both sides of Pelham Drive North and Pelham Drive South, and a few front on Lenox Drive. It is a fine residential neighborhood, with costly homes and well kept lawns, trees and shrubbery.

Defendants, appellants herein, contend that the fence which they erected falls in the category of a trellis. Any vines which defendants planted along the fence in an effort to comply with the terms of the covenant with respect to trellises are not very conspicuous, and in no sense can the fence be considered a trellis as that term is used in the covenant.

We come now to consider the principal question in the case: Did the erection of fences of various descriptions on at least 14 lots out of a total of 53 lots on the plat constitute a waiver or an abandonment of the restriction? In such matters a court of equity exercises a broad discretion. 13 Ohio Jurisprudence, 994, Section 174. The test applied is whether the character of the neighborhood has been changed by reason of the failure to object to previous violations. Applying the test to the facts in the instant case, we are required to determine whether the erection of fences of various kinds changed the character of the neighborhood. Unquestionably, the waiver of the violations with respect to the erection of numerous fences on the rear lot lines operates to deprive plaintiffs of the right to enforce the restriction with respect to the fences erected by the defendants on their rear lot line. The evidence is sufficiently clear that the lot owners by mutual consent accepted the erection of rear lot line fences without objection.

A court of equity will not enforce a restrictive covenant if there is no substantial value to the dominant estate remaining to be protected. The converse of this proposition is true and controlling here. The erection of the few side line fences did not substantially affect the architectual scheme and general landscaping of the area so as to render the enforcement of the restriction of no substantial value to the property owners. The few side line fences have offered at most only slight obstruction to the open rear lawns which afford unobstructed view, light and air to the lot owners. On the contrary, the side line fence erected by the defendants would substantially alter the character of the neighborhood and impair the enjoyment of plaintiffs' property. The restrictive covenant has not lost its value. In our opinion the waiver of the restriction with respect to the rear lot line fences and the failure to object to the erection of a few side line fences do not operate as a waiver with respect to de-

fendants' side line fence. The test is whether in view of what has happened there is still a substantial value in the restriction, which is to be protected. See *McGuire* v. *Caskey,* 62 Ohio St., 419, 57 N. E., 53. See, also, 14 American Jurisprudence, 644, Section 296.

In *McGuire* v. *Caskey, supra,* the court, on page 426, said:

"Most of the violations of the covenant are upon portions of the street remote from the premises of Caskey, and some of them are upon the opposite side of the street. There appears to be neither reason nor authority for the conclusion that the plaintiff's submission to such encroachments upon the space devoted to light, air and view as did not substantially affect his enjoyment of his own property, should operate as a waiver of his right to object to other encroachments by which such enjoyment would be materially impaired."

This case supports the contention of the plaintiffs that even though they failed to object to violations of the covenant on lots remotely situated from the plaintiffs' lot, such failure to object does not deprive them of the right to object to a violation of the restriction on lots in close proximity to their lot.

The restriction is still of great value to all lot owners. Where such restriction is still of substantial value to the dominant estate, the plaintiffs herein, a court of equity will restrain its violation. In support of this general proposition we cite *Brown* v. *Huber,* 80 Ohio St., 183, 88 N. E., 322; *Kokenge* v. *Whetstone,* 60 Ohio App., 302, 20 N. E. (2d), 965; *Hills* v. *Graves,* 26 Ohio App., 1, 159 N. E., 482; *Russell* v. *Harpel,* 20 C. C., 127, 131, 10 C. D., 732; *Gross* v. *Whitelaw,* 20 C. C. (N. S.), 116, 31 C. D., 160; 13 Ohio Jurisprudence, 1004, Section 182.

The burden of proof rests on the defendants to prove a waiver or abandonment of the restriction. The defendants have not proved a waiver or abandonment of the restriction as it affects side line fences. A decree may be drawn accordingly.

*Judgment accordingly.*

HORNBECK and CONN, JJ., concur.

CONN, J., of the Sixth Appellate District, sitting by designation in the Second Appellate District.