A decree will, therefore, be, and hereby is, entered for the defendant.

*Decree for defendant.*

. HURD, P. J., and SKEEL, J., concur.

HURD, P. J., KOVACHY and SKEEL, JJ., of the Eighth Appellate District, sitting by designation in the Ninth Appellate District.

MYERS ET AL., APPELLEES, *v.* SMITH ET AL., APPELLANTS.*

(No. 4954—Decided February 10, 1960.)

*Motion to certify the record overruled, October 5, 1960. Appeal dismissed, 171 Ohio St., 292.

*Mr. William R. Ferguson*, for appellees.
*Mr. Warren W. Gibson*, for appellants.

HUNSICKER, J. This is an appeal on questions of law and fact from a judgment entered in the Common Pleas Court of Summit County, Ohio. The action seeks to enjoin the claimed violation of a covenant running with the land, and, by a mandatory order, to require the removal of a certain construction built in claimed violation of the restriction. No question is raised as to the validity of the covenants as prepared, recorded and made a part of the restrictions in the allotment, known as the Searlhurst Allotment, Cuyahoga Falls, Ohio.

George R. Myers and his wife are the owners of a lot adjoining the house and lot owned by Alvey L. Smith and his wife. Both properties are located in the Searlhurst Allotment. Smith wishes to construct a garage which is to be attached to another addition to his home. In order to build this garage, he would be in violation of the restrictions in the allotment, because the garage would be one foot from the line of the Myers lot.

Section 3 of the restrictions in Searlhurst Allotment, as recorded in Book 43, pages 1, 2, 3 and 4, Summit County Records, says:

"No building shall be located nearer to the lot line or nearer to the side street line than the building set-back lines shown on the recorded plat. In any event, no building shall be located on any residential building plot nearer than twenty-five (25) feet to the front lot line, nor nearer than twenty (20) feet to any side street lines. No building except a detached garage or other outbuilding located one hundred (100) feet or more from the front line, shall be located nearer than five (5) feet to any side lot line."

The addition to the house which Smith has constructed is not in violation of the restrictions; however, the garage to be attached to this addition, a part of one wall of which is now built, is within one foot of the Myers property. This garage, if built, would face the street and would be set back so as to present,

along with a breezeway, a house with a straight line facing the street, from the garage of the Smith house to the opposite end of the house.

There is no testimony that any other house in the allotment has such an attached garage, as is contemplated herein, although there is some testimony that there are other attached garages in the allotment. No other home in the allotment has a garage within one foot of the side line of the adjoining lot, although there is testimony that 80 of the 85 garages built in the allotment are less than 5 feet from the side line of the adjoining lot, and two are slightly less than 3 feet from such lot line. Nearly all garages are built on the rear of the lots, many of which lots are 50 feet wide and only 100 feet deep. The Myers lot, being No. 2, is larger than many of the lots, and is on the corner of Stuart Avenue and Tallmadge Road. The Smith lot, being No. 1, also is larger in area than many of the lots, and is the next lot west of the Myers lot.

The claim of the appellants, Smith, is that they are building a garage which will be less than five feet from their east side lot line, under a building permit issued by Cuyahoga Falls; the restrictions have been so universally violated by owners of lots in the Searlhurst Allotment that such restrictions are no longer of any force or validity; the Myerses have waived all rights to enforce the restrictions, and are estopped to enforce the restrictions. The Smiths also say that the Myerses have been guilty of laches in the premises.

There has been no laches here on the part of Myers, for, after being informed by Smith that a garage was to be built, in violation of a supposed three-foot zoning regulation, Myers objected, even though Smith offered to buy two feet of the Myers land. At no time did Myers consent to the building of the proposed garage within one foot of the side line of his lot.

The fact that Smith received permission from the city zoning authorities for a variance of the three-foot setback from a lot side line is not controlling in the face of a valid building restriction contained in an allotment plan. The zoning authority has no power to change or vary covenants running with the land if the covenants are otherwise valid.

"The owner of one of two adjoining lots which were con-

veyed from a common grantor by deeds containing a covenant restricting their use 'for the purpose of a private residence only,' the validity of which is not disputed, may enforce the restriction and enjoin the use of the other lot for commercial parking purposes where there has been no such radical change in the character of the allotment and neighborhood as can be held destructive of such covenant, even though a municipal zoning ordinance, passed subsequent to the acquisition of title by the present owners of the lots, permits the use of such lots for commercial purposes." *Szilvasy* v. *Saviers*, 70 Ohio App., 34.

We next consider the claim that the restrictions have been so universally violated by owners of lots in the Searlhurst Allotment that such restrictions are no longer of any force or validity.

The evidence does disclose that many owners of property in this allotment have violated the restriction in the construction of their garages, in that the respective garages are less than five feet from the side lines of the lots, and less than 100 feet from the front lines of the lots. In no instance, however, has anyone built a structure one foot from the line, and there is no evidence of a garage attached to the house along the front line of any house in the allotment. All garages shown by pictures and by oral testimony have been set back from the house, although some garages, because of the curve of the street, appear to be in line with a neighbor's house. There is a general uniformity of location of most garages which shows most of them to be detached and built toward the rear of each home.

The general rule, in cases such as the instant action, is stated in *McGuire* v. *Caskey*, 62 Ohio St., 419, as follows:

"Where neighboring proprietors of urban lots are bound by a covenant in a deed, under which both hold, not to erect buildings within a prescribed distance from the street upon which the lots abut, either is entitled to an injunction to enforce observance of the covenant by the other."

A lot owner is not estopped to enforce the restrictions because of other violations of the restrictions by other lot owners, where there is substantial value in the restriction to the one seeking to enforce the covenant. *Brown* v. *Huber*, 80 Ohio

St., 183; *Romig* v. *Modest*, 102 Ohio App., 225. See, also, 15 Ohio Jurisprudence (2d), Covenants, Section 138, and authorities there cited.

A case very similar to the instant case is *Goulding* v. *Phinney*, 234 Mass., 411, 125 N. E., 703. The violation in that case consisted of placing a building within less than five feet of the side line of the lot, contrary to the restriction contained in the original deeds given by the one who laid out the lots. This restriction as to building within five feet of the lot line had been generally disregarded in the vicinity of the lots. The court there said that the right to relief from a violation of the restriction which directly affected the lot was not forfeited by a mere failure to object to similar violations by some others in the neighborhood.

A collation of authorities on the subject of "Building side line restrictive covenants" may be found in 36 A. L. R. (2d), 861 *et seq*.

The rule generally followed in cases similar to the instant case is stated in 5 Restatement of the Law of Property (Servitudes), Chapter 47, Topic C—Equitable Defenses, Section 560 f, at page 3305, as follows:

"f. *Substantially like violations.* To be effective as a bar to injunctive relief against a breach of a promise respecting the use of land the breach of a corresponding promise must be a breach approximating in gravity the breach against which relief is sought. If less in gravity it may have the effect of barring injunctive relief against an equal or a lesser breach without barring relief against so much of a breach as is or would be a greater breach. Thus building five feet beyond a set-back line may prevent the securing of an injunction against building out an equal distance, but not prevent the securing of an injunction against building ten feet beyond the line."

The test as set out in the third paragraph of the syllabus of *Romig* v. *Modest, supra,* which is that, "In such case, the test is whether, under the circumstances, there is still a substantial value in such restriction, which is to be protected; and where there is a substantial value to the dominant estate remaining to be protected, equity will enforce a restrictive covenant against

174

the erection of fences," applies in this case as effectually as though the side wall of the garage were a fence.

We therefore determine herein that: The covenant, restricting the erection of buildings within five feet of the side line of the Myers lot, is valid; it has not been waived, abandoned or lost, by reason of laches on the part of Myers; and an injunction should issue as prayed for in the petition.

*Injunction granted.*

DOYLE, P. J., and STEVENS, J., concur.