BERGER ET, PLAINTIFFS-APPELLEES, *v.* VAN SWERINGEN COMPANY ET, DEFENDANTS-APPELLANTS.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 26637. Decided July 17, 1964.

Mr. *Jules Eshner*, for plaintiffs-appellees.
Mr. *Roland A. Baskin*, for defendants-appellants.

*Per Curiam.* This is an appeal on questions of law and fact from a judgment entered in the Court of Common Pleas of Cuyahoga County. The cause is before us on plaintiffs' petition, defendants' answers and supplemental answer to said petition, plaintiffs' supplemental petition making new parties de-

fendant, defendants' answer thereto, plaintiffs' reply, the evidence presented in the trial court and the briefs and arguments of counsel. Plaintiffs seek a permanent restraining order enjoining the use by the defendants Levin and Visconsi and their associate Ratner of an 80 acre parcel of land for a regional shopping center or for any other use than single-family private residence purposes and enjoining the defendant, The Van Sweringen Company, from changing the restrictions from single-family private residence to regional shopping use. Plaintiffs also ask for a declaratory judgment declaring the rights of the parties.

The record shows that the 80 acre tract involved is bounded by Ohio State Route No. 1, a 400 foot highway on the east; by Shaker Boulevard, a divided highway occupied by two 60 foot road highways and a 400 foot center strip, on the north; Richmond Road, or as it is sometimes known, State Highway Route No. 175, 100 foot in width, on the west; and South Woodland Road, a 100 foot in width roadway, on the south, the highways being a part of and connected with the highway system of Cuyahoga County and the State of Ohio.

The record further shows that said parcel is situated in the City of Beachwood in a very vital part of the Van Sweringen development. From the record we note that the development of Shaker Heights and the municipalities to the east of Shaker Heights beginning at Shaker Square and extending east to the Chagrin River Valley, for the most part between Fairmount Boulevard on the north and South Woodland Road on the south, and in some places to the north and south of these two east and west principal highways, was a real estate development of the Van Sweringen Company. It was and is the largest residential real estate development in the community. The record discloses that the developers, in planning this very extensive real estate project, attempted, by restrictive covenants and other contractual agreements with purchasers, to protect purchasers of lots and home owners from any use of the property for other than residential purposes within the class of residences originally planned by The Van Sweringen Company. The evidence shows that the prop-

erty along Shaker Boulevard and South Woodland Road is in the approximate center of this high-class, large residential development. It appears from the record that The Van Sweringen Company has developed an exceptionally exclusive residential area in the municipalities of Shaker Heights, Beachwood, Pepper Pike and Hunting Valley. The heart of this area is a highly restricted section extending easterly from Coventry Road between the south side of Fairmount Boulevard to the south side of South Woodland Road. The lots in this area are wide, from 75 feet to 125 feet or more in width. Rigid restrictions apply to all of these lands. Every sale and resale was first approved by The Van Sweringen Company and architecture, building plans and color schemes likewise had to be approved by it. It is our view, and we therefore hold, that where an allotter plans a high-grade residential development embracing a large area of land extending throughout several municipalities, allots the land sections by making each subject to the same high type single-family private residence restrictions, insists upon a development in strict accordance with such restrictions so that all purchasers can see for themselves that these restrictions are strictly adhered to, retains control of the resale, architecture, set backs, lot lines, color schemes, and all other factors affecting the residence area, a uniform general plan is established. This situation prevailed as the true objective of the Van Sweringen development.

It is the claim of plaintiffs that the defendants Levin and Vinconsi hold title to their properties by deeds which are subject to restrictions of record; that these restrictions are substantially identical with all other Van Sweringen restrictions which restrict defendants' properties to single-family private residences; that the record indicates a uniform plan was adopted; and that the defendants, being familiar with this development and with the area, take title to said lands with actual as well as constructive notice of a uniform general plan.

The defendants, on the other hand, contend that their properties were not subject to any uniform general plan of restriction, nor did they have any notice of such uniform plan.

Mr. Levin, one of the defendants seeking to erect a shopping center involved herein, testified that he owned a great deal

of property in the City of Beachwood as well as Shaker Heights, Cleveland, and Pepper Pike, that he had driven all through the area many times, and that he was familiar with it.

Notwithstanding the argument of the defendants as to the effect of the recording of the instruments imposing restrictions upon the property in the Van Sweringen Company allotment as having been recorded in deed records rather than in the record of mortgages, our study of the record discloses that at least a part of the tract in question was included in the uniform, general plan of the Van Sweringen Company development. The restrictions applying to the various parcels comprising the tract in question are not identical but are similar and limit construction to single-family, private residences.

The evidence clearly demonstrates that the defendant owners were fully aware of the restrictions before they acquired these tracts, and we therefore conclude and hold that they took title thereto with both actual as well as constructive notice. If there was any doubt about this question, the record discloses that within 13 days of the acquisition of the parcel by Mr. Levin steps were taken to bring about a change in the restrictions to allow a commercial development. This, we believe, removes any doubt about it.

The record further discloses that The Van Sweringen Company reserved to itself and its successors the right to waive, change or cancel the restrictions upon the parcels acquired by the defendant owners as well as the lands of plaintiffs and others.

It should be noted that while we speak of the defendants' parcel of land as consisting of 80 acres, a part thereof was acquired by defendant Visconsi by separate conveyance from that acquired by defendant Levin, even though both defendants are acting jointly in promoting the commercial development of this land. The record indicates that the reservation applying to the Visconsi part of this parcel as it relates to the right to waive, change or cancel restrictions reads as follows:

"The Grantor reserves the right to waive, change or cancel any and all of the restrictions contained in this deed or in any other deed given by The Grantor in respect to lands, sublots or parcels now or formerly owned by The Van Sweringen Com-

pany if, in its judgment, the development or lack of development warrants the same or if, in its judgment, the same is necessary or advisable to the proper development of said lands, provided, however, that in respect to lands herein conveyed, no change shall be made in the restrictions herein set forth which will be more burdensome upon said premises than are herein set forth.'' The reservation as applied to the Levin parcel reads as follows: ''The Van Sweringen Company reserves the right to waive, change or cancel any and all of the restrictions contained in this instrument or in any other instrument given by The Van Sweringen Company in respect to lots or parcels within The Van Sweringen Company's Subdivision, if, in its judgment, the development or lack of development warrants the same, or if, in its judgment, the ends and purposes of said Subdivisions would be better served, provided, however, before any such waiver, change or cancellation of any or all of the above restrictions, contained in this instrument be effective, the approval of such waiver, change or cancellation, of the Council of the Village of Beachwood, shall first have been obtained.''

Since the reservation of the right to waive, change or cancel the restrictions as it relates to the Levin parcel is conditioned by the terms of such reservation upon the approval of such waiver, change or cancellation of the Council of the Village of Beachwood which shall first have been obtained, it is significant that the Council of the Village of Beachwood (now a city) enacted legislation involving this precise property changing it from a residential zoning classification to a shopping center classification.

The action of the Council of Beachwood was tested in the courts and was finally determined by the Supreme Court of Ohio in the case of *Willott* v. *Village of Beachwood*, 175 Ohio St., 557. The Supreme Court in that case affirmed the action of the legislative body in changing the zoning restriction from residential use to shopping center use, but in its opinion at page 559 was careful to point out that:

''* * * the zoning of land for business has no effect on existing restrictions confining the use of land to residential purposes, which restrictions arise from private deeds or private agreements. The council of a municipality, by changing

a residential zone to a business zone, does not presume to pass upon the effectiveness of a restrictive residential covenant, nor does this court, in passing upon the validity of a municipal zoning ordinance, presume to pass upon the effectiveness of a restrictive residential covenant in a private deed or private agreement.''

The legislative body of the City of Beachwood, having taken the initiative in passing the zoning ordinance allowing the use of the land in question for shopping center purposes, is in effect approving of the waiver, change, or cancellation of the restrictions affecting the use of the land of the defendants. In addition, the record shows that a formal approval was furnished following the action of Council.

From the record we find that the various documents containing the restrictions also contained therein the following clause:

''18. The herein enumerated restrictions, rights, reservations, limitations, agreements, covenants and conditions shall be deemed as covenants and not as conditions hereof, and shall run with the land, and shall bind the Owner until the first day of May, 2026, in any event, and continuously thereafter, unless and until any proposed change shall have been approved in writing by the owners of the legal title to all of the land on both sides of the highway within the block in which is located the property, the use of which is sought to be altered by said proposed change.''

The defendant owners question the right of the plaintiffs herein to bring this action to enforce these restrictions. There is abundant authority to establish that property owners who purchased their properties on the basis of the restrictions and representations that all property would be similarly restricted are entitled to bring such action when defendants took title with actual and constructive notice of such restrictions. See 15 Ohio Jurisprudence (2d), 125, Covenants, Section 131. *Arthur* v. *Bender*, 90 Ohio App., 187, 101 N. E. (2d), 140; *Grant* v. *Hickok Oil Co.*, 84 Ohio App., 509, 87 N. E. (2d), 708; *Brown* v. *Huber*, 80 Ohio St., 183 at 201, 88 N. E., 322; *Wallace* v. *The Clifton Land Company*, 92 Ohio St., 349, 110 N. E., 940; *Dixon* v. *Van Sweringen Company*, 121 Ohio St., 56, 166 N. E., 887.

The plaintiffs urge that The Van Sweringen Company, having sold all of its real estate, continues its existence solely to preserve and maintain the restrictions so that the same may conform to a general plan, and, in equity, is estopped to waive or cancel restrictions.

The defendants, on the other hand, maintain that the record fails to disclose any basis for the claim that in equity The Van Sweringen Company is estopped to waive or cancel restrictions.

This court, sitting as a court of equity, is confronted with the problem of determining the equity or lack thereof of The Van Sweringen Company's exercise of its power to change restrictions which have been reserved to said company. The Supreme Court in the case of *Dixon* v. *Van Sweringen, supra,* in contemplating the power to change restrictions, at page 69, said:

"* * * Such judgment would have to be exercised reasonably, if the occasion should ever arise, and not in an arbitrary, captious manner calculated to be obviously injurious to the rights of the lot owners in such allotment; and a court of equity would have power to protect rights affected thereby, if it should appear such authority was wrongfully exercised. * * *"

Certainly, The Van Sweringen Company has full knowledge of its own restrictions. It was, therefore, aware that paragraph 16 of the restrictions (paragraph 15 of the Visconsi restrictions) reads:

"The restrictions imposed by this instrument upon the use of the premises herein described shall not be held to prevent the use of adjoining and adjacent lands by The Van Sweringen Company or its successors or assigns, for such other purposes or in such other manner, as will not, in its judgment adversely affect the premises herein described * * *."

Standards are established by the restrictions and by the present development of the Van Sweringen property.

The first standard is contained in the very clause upon which defendants rely, that which authorizes The Van Sweringen Company to change the restrictions if "in its judgment, the development or lack of development warrants."

The second standard is that expressed by all of the restrictions and underscored by the development of the property

in accordance with these restrictoins. This standard requires an analysis of the right retained in The Van Sweringen Company to change the restrictions if "the development or lack of development warrants." This reservation must be considered along with the entire development of the Van Sweringen subdivisions. A developer might not be willing to bind himself irrevocably to a scheme which might not be successful. While such developer intended to create a community of single-family residence homes, it provided an escape clause in event the intended development failed to sell as planned. If it turned out that The Van Sweringen Company's lots could not be marketed for single-family residence purposes, it could invoke its waiver and dispose of the land for other purposes so long as such other purposes did not violate its promises and obligations to the people who had previously bought lots. But this waiver power would become applicable if, and only if, the development or lack of development made it necessary. This reserved waiver power could never come into existence so long as the properties had been developed or could be developed as the parties intended.

The defendant owners urge facts in support of the change in restrictions. These facts may be grouped into four distinct categories:

1. The changes in zoning regulations and restrictions within areas on the periphery of the City of Beachwood, each a considerable distance from the location of the proposed shopping center, viz: the Cedar-Richmond Road area; the Mathews property; the center strip between north and south roadway of Shaker Boulevard; the commercial development on Chagrin Boulevard west of Richmond Road; and the commercial development at Fairmount and Richmond Roads;

2. The suitability of the 80 acre tract for commercial rather than residential use, the tract remaining undeveloped over the years; and the fact that it is more suitable for this type of construction than the Cedar-Richmond Road area since it is surrounded by the three wide main highways suitable for future development to control traffic increase, a 400 foot wide freeway, east of Richmond Road and abutting the 80 acre tract constituting a high barrier between the shopping center and the

City of Beachwood and the Village of Pepper Pike, and the topography of the tract in question to the east and west of Richmond Road;

3. The appropriateness of the proposed shopping center, which would be unique in its architecture and design, to all neighboring residential properties, the design and construction being under regulation by the Planning Commission under ordinance, and its relative isolation from neighboring residences because of the topography plus width of three main highways;

4. The need for a shopping center in the community which is supported by City Zoning Division and Council and the fact that it would serve every retail need of the community and provide for the convenience of all residents, the small shopping centers in adjoining communities being inadequate for the growing community, which need was supported by the testimony of two local residents and a former mayor urging the need of the shopping center for the welfare of community and their opinion that it would not depreciate the value of residential property, the opinions of two expert appraisers of property that it would not depreciate value of residential property, and the testimony of the present mayor.

In examining the record and analyzing it in the light of defendant owners' contentions, we note that practically every suggestion of changes that have occurred over the years relates not to the specific insulated area between South Woodland on the south and Shaker Boulevard on the north, between Coventry Road on the west and the Chagrin River on the east, but instead deals almost entirely with areas on the periphery of the City of Beachwood.

We spoke of the heart of this single-family residence area as insulated. That is so because The Van Sweringen Company provided screening to protect this vital area. As one leaves the large lot in the Shaker-South Woodland section, we find first restrictions allowing lower priced single-family residences, then two-family residences, and a substantial distance away multiple-family use areas.

But within the area with which we are concerned, there has been allowed not a single instance of commercial development from Coventry Road to the Chagrin River.

The homes that surround this area and are directly opposite from the proposed shopping center under consideration were bought and constructed because the purchasers believed that the rigid restrictions would be kept. These homes are valued up to as high as $90,000.00.

We are met with what we believe to be the vital question. Is there anything shown by the record that this tract cannot be developed according to the original intention of the purchasers of these valuable homes and The Van Sweringen Company in keeping with the relationship formed contractually between these parties, who in good faith sold and acquired these properties over the years? In answer to the question posed, it must be said that the record does not. But on the contrary, there is credible evidence in the record which shows that now, since the Hilltop sewer project has been completed, this parcel can, in a reasonably short time, be developed with single-family residences comparable to those that presently surround this area.

We have given careful consideration to all of the factors advanced by the defendant owners with respect to the character of the shopping center, the desirability thereof, the support urged for it by the public agencies of the government of the City of Beachwood and, of necessity, respect their viewpoint with regard thereto. But in the final analysis and in balancing the equities of the situation we must come back to the basic question—does the record support the proposition that "the development or lack thereof warrant" the judgment of The Van Sweringen Company directors in authorizing this change?

Our decision must be based upon principles suggested by our Supreme Court stated in its opinion in *Dixon* v. *Van Sweringen Co., supra*, at page 61, wherein Day, J., says, quoting from the opinion in *Wallace* v. *Clifton Land Co., supra*:

" 'These restrictions were not imposed for the benefit of the original proprietor, further than the fact that the general and uniform plan of restricting the allotment to resident purposes might contribute to a readier sale of the lots. The real purpose of the restrictions was to guarantee to the purchasers a quiet residence locality, where they might build their homes

and live apart from the noise of manufacturing and the bustle and confusion of the marts of trade. The great majority of these purchasers undoubtedly bought with this idea in view. Their grantor kept faith and imposed like restrictions upon all the lots in this allotment that were similarly located. The purchaser who bought with the intent or purpose of disregarding the restrictions and devoting the property purchased by him to any purpose that might suit his whim or his business needs, regardless of the restrictions written in his deed, has no standing in a court of equity.' ''

From the evidence and the findings above expressed, we conclude and therefore hold that to permit the building of the proposed regional shopping center on the subject tract without the written consent of the property owners in the immediate area and over their objections would be improper.

To permit at this time The Van Sweringen Company, which no longer owns any property in the subdivisions, through its trustees and directors, to set aside the covenants and agreements made with these property owners in order to permit more recent purchasers to build and operate any type of commercial establishment, even though such installation might benefit other persons many blocks away, and particularly their convenience, cannot be allowed.

It appears further that the record presented does not justify the conclusion that the development or lack thereof warrants a change in the restrictions involved.

The defendant owners, Visconsi and Albert Levin, acquired the tracts in question subject to certain restrictions which prohibit their proposed use of said tract, and equity requires that they be permanently enjoined from using said premises for other than single-family, private residence purposes.

The defendant, The Van Sweringen Company and Van Sweringen Foundation, shall be and are enjoined from changing the restrictions on said lands from single-family, private residence usage to regional shopping center use.

A declaratory judgment is granted finding:

1. That the release of restrictions by defendant, The Van Sweringen Company, its successors, agents, or assigns, is illegal and void and contrary to the general uniform plan of restric-

tions under the circumstances set forth and cannot be upheld under the equitable principles applicable;

2. That the use of the property of defendants, Levin and Visconsi, for a shopping center is in violation of the restrictions set forth in plaintiffs' pleadings;

3. That the acts of The Van Sweringen Company are in conflict with its obligations and the rights of the plaintiffs;

4. That The Van Sweringen Company be declared in equity a trustee for the protection of the rights of all of the property owners who have purchased single-family, private residences or lots, containing single-family, private residences from The Van Sweringen Company in the cities of Beachwood and Shaker Heights, and in the Village of Pepper Pike, Ohio, within the area described in plaintiffs' petition, and bounded by Coventry Road on the west, Shaker Boulevard on the north, South Woodland on the south and the Chagrin River on the east;

5. That the restrictions contained in all deeds and imposed upon all properties in the area affected be declared binding upon all plaintiffs and defendants.

Decree for plaintiffs. Order see journal.

SILBERT, P. J., ARTL and CORRIGAN, JJ., concur.