[Cite as *Thomarios v. Hardy Invest. Assocs., Ltd.*, 2017-Ohio-7597.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

PAUL THOMARIOS

    Appellant

    v.

HARDY INVESTMENT ASSOCIATES, LTD.

    Appellee

C.A. No.    28396

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2015-05-2830

DECISION AND JOURNAL ENTRY

Dated: September 13, 2017

---

CALLAHAN, Judge.

**{¶1}** Appellant, Paul Thomarios, appeals the judgment entered in favor of Appellee, Hardy Investment Associates, Ltd. ("Hardy Investment"), in the Summit County Court of Common Pleas. For the reasons set forth below, this Court affirms.

I.

**{¶2}** In 2008, Mr. Thomarios purchased 8.93 acres and four buildings located at 3895 Copley Road, in Copley Township, Ohio ("the property") from Hardy Investment for $835,000. The property was a former 84 Lumber store location. The negotiated purchase price included a restrictive covenant that prohibited the property from being used for the operation of a retail lumber, building supply business, or truss manufacturing business for a period of 20 years beginning on October 31, 2008. The restrictive covenant was signed by Mr. Thomarios and recorded with the general warranty deed in the Summit County Fiscal Office.

{¶3} In 2014, Mr. Thomarios attempted to sell the property to Building 9. During these negotiations, Building 9 became aware of the restrictive covenant. Mr. Thomarios contacted Hardy Investment and requested a waiver of the restrictive covenant. Hardy Investment declined to waive the restrictive covenant. Building 9 chose not to purchase the property.

{¶4} In response to the failed sale, Mr. Thomarios filed a complaint alleging two claims: declaratory judgment and breach of covenant. The declaratory judgment action sought to invalidate the restrictive covenant as being unenforceable on three grounds: 1) it no longer conveys a benefit or substantial value to Hardy Investment; 2) it is a general restraint on trade; and 3) there was no valuable consideration given for the covenant. The claim for breach of covenant alleged the sale of the property to Building 9 failed because Hardy Investment deemed Building 9 to be a building supply business and withheld its consent to the sale. The trial court granted Hardy Investment's motion for summary judgment on both of Mr. Thomarios' claims. Mr. Thomarios timely appeals this judgment, raising one assignment of error for both causes of action.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED TO THE PREJUDICE OF [MR. THOMARIOS] BY GRANTING SUMMARY JUDGMENT TO [] HARDY INVESTMENT [].

{¶5} In his sole assignment of error, Mr. Thomarios argues the trial court erred when it granted summary judgment in favor of Hardy Investment. Mr. Thomarios presents various arguments as to why summary judgment was improper on both claims. To facilitate the analysis, this Court will reorder the arguments to align with the causes of action.

**Summary Judgment Standard**

{¶6}    Appellate courts consider an appeal from summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).  This Court uses the same standard that the trial court applies under Civ.R. 56(C), viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *See Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983). Accordingly, this Court stands in the shoes of the trial court and conducts an independent review of the record.

{¶7}    Summary judgment is proper under Civ.R. 56 when: (1) no genuine issue as to any material fact exists; (2) the party moving for summary judgment is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can only reach one conclusion, and that conclusion is adverse to the non-moving party. Civ.R. 56(C); *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶8}    Summary judgment consists of a burden-shifting framework. The movant bears the initial burden of demonstrating the absence of genuine issues of material fact concerning the essential elements of the non-moving party's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996).  Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). *Id.* at 292-293. Once the moving party satisfies this burden, the non-moving party has a reciprocal burden to "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 293. The non-moving party may not rest upon the mere allegations or denials in his pleadings, but instead must submit evidence as outlined in Civ.R. 56(C). *Id.* at 293; Civ.R. 56(E).

**DECLARATORY JUDGMENT**

{¶9}    "[T]he three prerequisites to declaratory relief are (1) a real controversy between the parties, (2) justiciability, and (3) the necessity of speedy relief to preserve the parties' rights." *ProgressOhio.org, Inc. v. JobsOhio*, 139 Ohio St.3d 520, 2014-Ohio-2382, ¶ 19, citing *Burger Brewing Co. v. Liquor Control Comm., Dept. of Liquor Control*, 34 Ohio St.2d 93, 97 (1973). The trial court found Mr. Thomarios satisfied these three elements and went on to address the merits of his declaratory judgment claim.  The parties do not challenge the trial court's finding regarding justiciability.  This Court will not address issues that neither party raised, so we caution that this decision, to the extent it does not address certain issues, should not be construed as a ratification of the lower court proceedings.

**Meaning of the restrictive covenant**

{¶10}  Mr. Thomarios argues there is a genuine issue of material fact regarding whether the restrictive covenant is enforceable because the language in the restrictive covenant is open to different interpretations.  This Court disagrees.

{¶11}  "A 'restrictive covenant' is a 'private agreement, [usually] in a deed or lease, that restricts the use or occupancy of real property, [especially] by specifying lot sizes, building lines, architectural styles, and the uses to which the property may be put.'" *Canton v. State,* 95 Ohio St.3d 149, 2002-Ohio-2005, ¶ 28, quoting *Black's Law Dictionary* 371 (7th Ed.Rev.1999).  "The construction of written instruments, including deeds is a matter of law. Questions of law are determined de novo." (Internal citations omitted.) *Karam v. High Hampton Dev., Inc.*, 9th Dist. Summit Nos. 21265, 21269, 2003-Ohio-3310, ¶ 20.

{¶12}  The rules of construction applicable to restrictive covenants are well established. Generally, restrictions on the free use of land are disfavored. *Driscoll v. Austintown Assocs.*, 42

Ohio St.2d 263, 276-277 (1975). If the covenant's language is indefinite, doubtful, and capable of contradictory interpretations, the court must construe the covenant in favor of the free use of land. *Houk v. Ross*, 34 Ohio St.2d 77 (1973), paragraph two of the syllabus. However, where the language in a restriction is clear, a court must enforce the restriction. *Dean v. Nugent Canal Yacht Club, Inc.*, 66 Ohio App.3d 471, 475 (6th Dist.1990).

{¶13} The primary rule when interpreting the language of a restrictive covenant is to determine the intent of the parties as reflected in the language contained in the restrictive covenant. *Hitz v. Flower*, 104 Ohio St. 47, 57 (1922); *Exchange Realty Co. v. Bird*, 9th Dist. Summit No. 2169, 1933 WL 1619, *4 (Dec. 4, 1933). Courts must give the words used in a restrictive covenant their common and ordinary meaning. *See Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978) paragraph two of the syllabus. In addition, a court must read the restrictive covenant as a whole. *LuMac Dev. Corp. v. Buck Point Ltd. Partnership*, 61 Ohio App.3d 558, 563 (6th Dist.1988).

{¶14} The restrictive covenant in this matter states as follows:

> None of the Subject Property as described more fully on Schedule A herein (collectively the "Encumbered Property") shall be used for the operation of a retail lumber or building supply business or truss manufacturing company for a period of twenty (20) years after the date hereof.

Mr. Thomarios asserts "building supply business" has two opposing interpretations.

{¶15} To determine whether "building supply business" is an ambiguous phrase, this Court must first look to the parties' intent as contained in the language of the entire restrictive covenant. *See Hitz* at 57; *Exchange Realty Co.* at *4. The parties agree that the purpose of the restrictive covenant is to protect 84 Lumber from competition in the Copley Township area. Based on the language in the restrictive covenant, the parties intended to protect 84 Lumber from

three types of competitors: retail lumber businesses, building supply businesses, and truss manufacturing companies.

{¶16} Determining the meaning of the phrase "building supply business" requires a review of each of the words. "[B]uilding" is defined as "the art or business of constructing buildings." *The Merriam-Webster Dictionary* 63 (New Ed.2005). "[S]upply" is defined as "the quantity or amount (as of a commodity) needed or available" and "the quantities of goods or services offered for sale at a particular time or at one price." *Id*. at 494. "[B]usiness" is defined as "a commercial or industrial enterprise." *Id*. at 65. Putting these words together into the phrase "building supply business" results in the following ordinary and common meaning: a commercial or industrial enterprise that sells goods or services it has available at that point in time necessary to construct a building.

{¶17} Mr. Thomarios argues the phrase "building supply business" is open to different interpretations based upon a company's ability to provide varying quantities of building supplies. Mr. Thomarios contends a company that has limited stock or cannot resupply the same material is not a "building supply business." Contrary to Mr. Thomarios' argument, the plain meaning of supply does not place quantifiers or limits on the amount of goods available or offered for sale at a particular time. Therefore, "building supply business" is not subject to two different interpretations.

{¶18} After reviewing the parties' intent as to the entire restrictive covenant and applying the common and ordinary meaning of the terms, this Court finds the phrase "building supply business" is not ambiguous. Because the phrase "building supply business" is clear, the restrictive covenant is enforceable. *See Dean*, 66 Ohio App.3d at 475.

**{¶19}** Based upon the review of the record, Mr. Thomarios failed to meet his *Dresher* burden of establishing the existence of a genuine issue of material fact regarding the meaning of the language contained in the restrictive covenant.

**Conveying a benefit and substantial value**

**{¶20}** Mr. Thomarios argues there is a genuine issue of material fact regarding whether the restrictive covenant is unenforceable because it no longer conveys a benefit and substantial value to Hardy Investment. This Court disagrees.

**{¶21}** In order to enforce a restrictive covenant that has been abandoned or waived, the restrictive covenant must still have substantial value to the dominate estate. *Romig v. Modest*, 102 Ohio App. 225, 229 (2d Dist.1956). In that instance, the court looks to see "if the nature of a neighborhood or community has so changed that the restriction has become valueless." *Landen Farm Community Serv. Assn., Inc. v. Schube*, 78 Ohio App.3d 231, 235-236 (12th Dist.1992). "The test is whether in view of what has happened there is still a substantial value in the restriction, which is to be protected." *Romig* at 230.

**{¶22}** Mr. Thomarios states, without any Civ.R. 56(C) evidentiary support,[1] that 84 Lumber had plans to build a new store after it sold the property to him. He contends the purpose behind the covenant was to protect the new store from competition. Mr. Thomarios argues that because the new 84 Lumber store was never built, the restrictive covenant has no legitimate interest to protect. Essentially, Mr. Thomarios argues that Hardy Investment has waived or

---

[1] Mr. Thomarios did not present any evidence as to this fact with his brief in opposition to summary judgment. In his appellate brief, Mr. Thomarios cites to his pretrial statement to support this fact. The pretrial statement is improper Civ.R. 56(C) evidence and will not be considered. *See Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, W.D.Penn. No. 02-2116, 2006 WL 2289789, *6 (Jan. 13, 2006); *Kent's Excavating Servs., Inc. v. Leneghan*, 8th Dist. Cuyahoga No. 104820, 2017-Ohio-1371, ¶ 23.

abandoned the restrictive covenant by not building a new store and without a store the restrictive covenant has no substantial benefit or value to Hardy Investment.

{¶23} Mr. Thomarios has failed to present any evidence, much less evidence creating a genuine issue of material fact, that 84 Lumber was going to build a store. Without this evidence, Mr. Thomarios is unable to support his legal position of waiver or abandonment of the restrictive covenant.

{¶24} Even if Mr. Thomarios had presented evidence of waiver or abandonment, he failed to present any evidence that there were changes in the neighborhood that impacted the value of the restrictive covenant. Mr. Thomarios alleged in his complaint that there were at least three competitors in the area at the time he purchased the property. In his brief in opposition, Mr. Thomarios relied upon his deposition testimony that there are at least three competitors in the area currently. Because the number of competitors has not changed between 2008 and 2016, there is no evidence that the value of the restrictive covenant has changed.

{¶25} Based upon the review of the record, Mr. Thomarios failed to meet his *Dresher* burden of establishing the existence of a genuine issue of material fact regarding the lack of substantial value or benefit of the restrictive covenant to Hardy Investment.

**Public policy**

{¶26} Mr. Thomarios argues there is a genuine issue of material fact regarding whether the restrictive covenant is void ab initio for violating public policy because it has no substantial value or purpose. This Court disagrees.

{¶27} In determining whether a restrictive covenant is void as against public policy, "generally speaking, whatever is not forbidden by statute, nor contrary to judicial decision, nor against the public health, morals, safety, or welfare, or the like, is not against public policy."

*Dixon v. Van Sweringen Co.*, 121 Ohio St. 56, 62-63 (1929); *see also Winfrey v. Marks*, 14 Ohio App.2d 127, 129 (9th Dist.1968). This Court has previously discounted Mr. Thomarios' assertion that the restrictive covenant has no substantial value or purpose. Further, Mr. Thomarios did not present any other arguments or evidence that the restrictive covenant is forbidden by statute, contrary to judicial decision, or against the public health, morals, safety, or welfare.

{¶28} Based upon the review of the record, Mr. Thomarios failed to meet his *Dresher* burden of establishing the existence of a genuine issue of material fact regarding the restrictive covenant being against public policy.

**Restraint of trade**

{¶29} Mr. Thomarios argues there is a genuine issue of material fact regarding whether the restrictive covenant is void as a matter of law because it is an unlawful restraint of trade. Hardy Investment moved for summary judgment on this issue. However, Mr. Thomarios did not present any arguments or evidence in his brief in opposition as to this specific issue. "Arguments that were not raised in the trial court cannot be raised for the first time on appeal." *JPMorgan Chase Bank, Natl. Assn. v. Burden*, 9th Dist. Summit No. 27104, 2014-Ohio-2746, ¶ 12. Accordingly, Mr. Thomarios has waived all arguments regarding the restrictive covenant being void as an unlawful restraint of trade.

{¶30} Mr. Thomarios has failed to meet his *Dresher* burden of establishing the existence of a genuine issue of material fact regarding the restrictive covenant being an unlawful restraint of trade.

**BREACH OF COVENANT**

### Building 9: Is it a building supply business?

**{¶31}** Mr. Thomarios argues there are genuine issues of material fact regarding whether Building 9 is a building supply business as contemplated by the restrictive covenant. While the parties argued, and the trial court decided, that Building 9 is a building supply business, these arguments were irrelevant as to Mr. Thomarios' breach of covenant claim and the trial court's decision was unnecessary.[2]

**{¶32}** Mr. Thomarios' breach of covenant claim alleged Hardy Investment breached the restrictive covenant in two ways: 1) Hardy Investment "wrongfully and unlawfully withheld consent to sell the [p]roperty to Building 9," and 2) Hardy Investment "wrongfully considered the operation of Building 9 [] as a building supply business."

**{¶33}** The relevant portion of the restrictive covenant states as follows:

> None of the Subject Property as described more fully on Schedule A herein (collectively the "Encumbered Property") shall be used for the operation of a retail lumber or building supply business or truss manufacturing company for a period of twenty (20) years after the date hereof.

There is no language in the restrictive covenant requiring Hardy Investment to consent to Mr. Thomarios selling the property to Building 9 or any other buyer. In fact, Hardy Investment has no voice in Mr. Thomarios' sale of the property. Thus, Hardy Investment's lack of consent to the sale cannot be a breach of the restrictive covenant.

**{¶34}** Contrary to Mr. Thomarios' position, the terms of the restrictive covenant place no duties or obligations on Hardy Investment. Thus, Hardy Investment's position that Building 9 is a building supply business cannot be a breach of the restrictive covenant.

---

[2] This Court's earlier analysis regarding the meaning of "building supply business" is limited to deciding if the phrase was ambiguous relative to the requested declaratory relief and has no application to the analysis of the breach of covenant claim.

**{¶35}** The restrictive covenant places a *usage* restriction, and not a sale restriction, on the owner of the property. Thus, the only person/entity that could potentially breach the covenant at the time the claim was filed was Mr. Thomarios, the property owner. And such a breach would be by way of using the property in "the operation of a retail lumber or building supply business or truss manufacturing company" between October 31, 2008 and October 31, 2028.

**{¶36}** Because it was impossible for Hardy Investment to breach the covenant under the facts asserted by Mr. Thomarios, the question of whether Building 9 is a building supply business is not germane to Mr. Thomarios' breach of covenant claim. Accordingly, this Court need not consider whether Mr. Thomarios met his *Dresher* burden of establishing the existence of a genuine issue of material fact regarding whether Building 9 was a building supply business.

## Conclusion

**{¶37}** After considering the foregoing arguments, the trial court did not err by granting summary judgment in favor of Hardy Investment as against Mr. Thomarios on both of his claims. Mr. Thomarios' assignment of error is overruled.

III.

**{¶38}** Mr. Thomarios' assignment of error is overruled.   The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

SCHAFER, P. J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

WILLIAM J. NOVAK and TESSA M. HELLER, Attorneys at Law, for Appellant.

MICHAEL P. O'DONNELL and ALEXANDRA DATTILO, Attorneys at Law, for Appellee.

KERRI KELLER, Attorney at Law, for Appellee.