[Cite as *Stephan v. State*, 2015-Ohio-4516.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MIAMI COUNTY**

| | | |
|---|---|---|
| ROBERT L. STEPHAN, et al. | : | |
| | : | |
| Plaintiffs-Appellants | : | C.A. CASE NO. 2015-CA-15 |
| | : | |
| v. | : | T.C. NO. 13-85 |
| | : | |
| THE STATE OF OHIO, et al. | : | (Civil appeal from |
| | : | Common Pleas Court) |
| Defendants-Appellees | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___30th___ day of _____October_____, 2015.

. . . . . . . . . .

JOHN E. FULKER, Atty, Reg. No. 0003295, P. O. Box 8, 12 S. Cherry Street, Troy, Ohio 45373
     Attorney for Plaintiffs-Appellants

MICHAEL E. GUTMANN, Atty. Reg. No. 0020511 and FRANK J. PATRIZIO, Atty. Reg. No. 0055468, 123 Market Street, P. O. Box 910, Piqua, Ohio 45356
     Attorneys for Defendants-Appellees

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} This matter is before the Court on the May 27, 2015 Notice of Appeal of Robert L. Stephan, David B. Corfman, Robert R. Bowman, Jr., Sheila K. Bowman, Elmer Deitering, Greg. D. Lowery, Norman R. Seipel, Gaye E. Cavender, Scott R. Seipel, and

Brian L. Seipel (collectively, "Plaintiffs"). Plaintiffs appeal from the April 28, 2015 "Decision and Judgment Entry Granting Motion to Dismiss Filed by the Defendant, State of Ohio, Granting Defendants' Motion for Summary Judgment, Denying Plaintiff's Motion for Summary Judgment and Dismissing Complaint." Therein the trial court found that multiple Defendants were entitled to the continued enforcement of a covenant restricting the use of the parties' real property, located in the Recker Heights Subdivision, to residential use. We hereby affirm the judgment of the trial court.

{¶ 2} On February 6, 2013, Robert L. Stephan filed a Complaint for Declaratory Judgment against the State of Ohio and multiple Defendants. Stephan alleged in his "First Claim" that he owns the following real estate: "Situate in the City of Piqua, County of Miami and State of Ohio, bounded and described as follows: Being Lots numbered 7569 and 7570 in said City of Piqua as reflected at Book 14, Page 70 of the Plat Records of Miami County, Ohio." Stephan asserted as follows:

> Plaintiff Stephan's properties were formerly designated Lots numbered 5 and 6 of * * * [the] Recker Heights Subdivision, fronting on U.S. Route 36 at the intersection of * * * Route 36 with Looney Road; the State of Ohio has now taken title, for highway purposes, to a strip of ground off the Southern end of * * * former Lot 5, and a portion of both the southern and eastern sides of former Lot 6. Said lots have now been annexed to the City of Piqua and the remaining parts of the same have been re-numbered Inlots numbered 7569 and 7570 and re-zoned for commercial usage. Said real estate lies almost directly adjacent to the entrance to the northbound entrance ramp of Interstate 75.

{¶ 3} Stephan sought relief from restrictive covenants contained in deeds to his two lots that require the land to be used for residential purposes only. Stephan asserted that "a vast number of changes of circumstances concerning the area surrounding Plaintiff's lots and all other lots within the subdivision have occurred." The Complaint provides that Stephan's lots, due to the "intensive commercialism of the surrounding area, have come to constitute a tiny semi-residential island in the middle of a virtual sea of commercial enterprises." Stephan asserted that "in view of the unforeseen changes in the design and layout of the intersection of Piqua's main traffic arteries, U.S. 36 and Interstate 75, and the extensive change in the essential character of the surrounding area, the restrictions against any usage other than residential within the Recker Subdivision have become a glaring anachronism." Stephan asserted that enforcement of the restriction has "prevented the Plaintiff's lots, and that of the other owners of lots within said subdivision, from putting their respective properties to their highest and best uses, and has thereby diminished, and continues to diminish the values of all such properties."

{¶ 4} In his "Second Claim," Stephan asserted that in a previous case in the Miami County Court of Common Pleas, brought by him and others against their predecessors in title, the trial court declared the residential use restrictions to be invalid and unenforceable. A copy of *Stephan v. Hartzell,* Miami C.P. No. 80-1 (March 17, 1980), is attached to the complaint. The decision provides as follows:

> This matter having come on before the Court for hearing on the Complaint and the Entry of Appearance and Consent of Defendant Rosemary Stephan Driver; the Court finds that all parties have been duly and properly served in accordance with the provisions of the Ohio Rules of

Civil Procedure and are therefore properly before the Court. The Court further finds that all parties defendant other than Rosemary Stephan Driver are in default for appearance, motion, answer and other pleadings.

The Court therefore finds the issues in favor of the Plaintiffs and finds the allegations contained in the Complaint to be true.

It is, therefore, accordingly declared, as the judgment of this Court, that the covenants and restrictions referred to and set forth in Plaintiffs' Complaint are invalid and unenforceable as to Plaintiffs' respective tracts of real estate, * * * and any cloud created by said covenants and restrictions is hereby declared to be removed from Plaintiffs' title to and respective tracts of real estate; it is further ordered that the Defendants be, and they are, hereby, forever enjoined from interfering, or attempting to interfere, with the peaceful use and enjoyment of said premises by the Plaintiffs and their respective heirs and assigns.

{¶ 5} Stephan asserted in his "Third Claim" that at the time the Defendants and their predecessors in title "acquired their respective tracts of real estate within said subdivision, there existed a commercial enterprise known and operated as The Hunt Beverage Company on Lots No. 7 and 8 in said subdivision, which lots directly abut Plaintiff's property, formerly designated Lots 5 and 6 of said subdivision." Stephan asserted that the business was in operation from 1963 until 1985, and that it "was thereafter sold to other persons who continued the business at the same location for an additional period of time." Stephan asserted that the former Hunt Beverage Company was "utilized by a construction company for a short time and is presently being utilized by

Ambassador TV & Electronics, a commercial enterprise specializing in the sale and repair of used television sets. As of the date of filing this Complaint, arrangements are in process for the establishment of both a beauty shop and a drive-thru coffee shop at the same location." According to Stephan, due to "the acquiescence of the Defendants and/or their predecessors in title, with respect to the open and obvious violation of the aforesaid restriction against any usage other than residential," the Defendants "are deemed to have waived any such violation and are presently estopped from insisting on the continued viability of the restriction."

{¶ 6} On February 19, 2013, the State of Ohio filed a motion to dismiss "for the reason that the State of Ohio does not assert any interest it seeks to protect and will not otherwise participate in the litigation herein." On March 6, 2013, the "Answer of Certain Defendants to Plaintiff's Complaint for Declaratory Judgment" was filed by 32 Defendants, and on March 12, 2013, another Defendant filed an Answer. Over the next couple of months, the above named Plaintiffs filed notices of joinder as additional party plaintiffs. On August 14, 2013, a "Stipulation of Counsel" was filed, signed by counsel for Plaintiffs and Defendants.

{¶ 7} On November 20, 2013, Defendants' Motion for Summary Judgment was filed. The Defendants noted that this "case marks the fifth time that the issue of the validity and enforceability of restrictive covenants in the deeds to lots in the Recker Heights Subdivision [have] been brought before this court." Defendants further noted that Stephan "and/or his predecessors in title were parties to each of the four earlier cases." According to Defendants, the attached affidavits and exhibits show that "there have been minimal changes in the Recker Heights Subdivision and none which have changed its

status as a residential subdivision. The restrictive covenant as to residential use * * * has been and remains to be of substantial benefit to Defendants." Defendants asserted that, as determined in the previous actions involving the covenants, they "are entitled to enforce such restrictions against all other lot owners. Any changes outside of the subdivision are consequently immaterial." Defendants asserted that in the absence of a genuine issue of material fact, they were entitled to summary judgment as a matter of law.

{¶ 8} Attached to Defendants' summary judgment motion, inter alia, are several affidavits which provide that the affiants purchased their lots in the Recker Heights Subdivison in agreement with the covenant that defines and preserves the Recker Heights Subdivision as a residential neighborhood. They aver that four new homes have been built in the subdivision since 1986. The affiants aver that neither their reasons for residing in the subdivision, nor the residential nature of the subdivision, has changed.

{¶ 9} The affiants detail improvements that have been made to their properties as follows: Juanita Anderson (roof replacements, window replacement, painting, door replacement, spouting replacement, trees trimmed/removed and landscaping improvements, sidewalk replacement, remodeled kitchen, new furnace); William and Pamela Clark (2,200 square foot addition to their home with a large wooden deck); Dorothy Douglas (general maintenance); Jodelle L. (Boltin) Fair (painting house and garage, roof replacement, landscaping, new patio, basement waterproofing, remodeled kitchen and bathroom, new carpet); Daniel E. Francis (new vinyl roof on attached garage, replacement of five basement windows and partially renovated basement); Timothy and Mary Beth Gicale (added central air, upgraded furnace to high efficiency model, added

chimney liner, replaced septic tank, drilled new well, added sump pump and surface water drainage system, replaced and upgraded hot water heater and water softener, replaced 30% of original water pipes and replaced roof, etc.); James Hannahs (carpeted basement stairs and front porch, added storage shed for tools, leaf guards for gutters, new awnings and landscaping, shelving in garage, etc.); Jerry and Helen Hicks (new roof on house and over back porch, central air and furnace replaced, new kitchen counter, new windows and wheel chair ramp, etc.); David and Kathleen Hirt (new two car garage, new roof, new kitchen, new patio with roof, new windows, etc.); Frances Kay Jackson (new spouting, new rubber roof on porch, new roof on house, updated kitchen, landscaping, new doors, new bathroom flooring, etc.); Katie Pawlacyk (new furnace, new fuse panel, new energy efficient windows, new family room, replaced asphalt driveway with concrete, new landscaping, fenced backyard); Samuel and Anna Poplin (landscaping, new furnace and air conditioner, new shed, interior remodeling, new doors, roof and deck); Mary Sargent (new furnace, hot water heater, water softener, landscaping); Margaret A. Smith (added second garage, new siding, new furnace and central air, new windows, new blacktop driveway); Brian and Cindy Snapp ("purchased land and cleared land to build new home in this quiet, secluded area"); Michael and Carol Thomas (front porch with new roof, concrete driveway, "8 foot addition on both ends of house," new doors and storm doors, gutters, central air and furnace, etc.); Rick Voisard (enclosed patio, new concrete driveway, new windows and doors, roof, etc.); Jerrold L. Voisinet (tiled kitchen floor, remodeled master bedroom and bath, driveway sealed, removed 25 dump truck loads of brush from property, etc.); and Dixie L. Wyan (enlarged home by adding 2-car garage and 2 decks and outbuilding). Affiants further assert that they believe that in the absence

of the restrictive covenant, they will lose the peaceful and quiet environment they currently enjoy.

{¶ 10} Plaintiffs filed their motion for summary judgment three months later. After noting that "Counsel for the Defendants has asserted that changes in the character of the areas *merely surrounding* the subdivision are irrelevant," Plaintiffs argued that "if the situation were reversed, i.e., if the area immediately surrounding the Defendants' subdivision consisted principally of strip-clubs, bordellos, bootleg joints, flop-houses and junkyards," the Defendants "would consider the nature and characteristics of the surrounding neighborhood to be quite relevant to their personal sensitivities and to the values of their own individual lots."

{¶ 11} Plaintiffs asserted that their complaint was not barred by res judicata and collateral estoppel because "a vast number of events which affect the restrictive covenants have occurred * * *. For example, it is undisputed that some 74 new building and zoning permits for new or relocated commercial uses in 'the area roughly defined as U.S. Rt. 36 at I-75 from the Mall to Looney Road' have been issued." Plaintiffs asserted that "most significantly, in the spring of this year, Lot No. 7 and Lot No. 8 of the Recker Heights Subdivision were annexed to the City of Piqua and, after public hearing, unanimously zoned commercial to accommodate a Winan's drive-thru coffee shop, a hair-styling business and other storefronts intended for commercial usages."

{¶ 12} Plaintiffs asserted that "as early as 1957, the voters of Springcreek Township adopted a zoning plan under which a substantial portion, if not all, of the Recker Heights lots could be used for business or commercial purposes; then, in 1986, the City of Piqua annexed a portion of said subdivision, including" Stephan's "lots, and zoned it

as B-2 (Neighborhood Business)."  Plaintiffs asserted that "in 2007, a Comprehensive Plan Update (of Piqua's 1970 Comprehensive Plan), prepared for, and in conjunction with City of Piqua officials and staff, identified Plaintiffs' lots as an area 'targeted for redevelopment' for Piqua's 'Commercial/Industrial' usage," citing the Stipulation of Counsel.

{¶ 13} Plaintiffs directed the court's attention to the affidavit and attached report of David Hartt, a "professional planner."  According to Hartt's report, in "1946 private development restrictions were imposed on Recker Heights Subdivision," and the property "is now in a commercial environment and it is no longer a reasonable regulatory policy to confine this site to the residential only restrictions."  Hartt's report provides that the "area surrounding the Recker Heights Subdivision has changed dramatically since the restrictions were first imposed with respect to land use and development; highway construction; traffic; annexation; and public regulatory policy."  He noted that "most of the Recker Subdivision was * * * rezoned in 1957 to permit commercial uses.  This zoning policy * * * recognizes the changing conditions and that commercial development of the area, including the subject site, is now in the public interest."

{¶ 14}  Citing the Hunt Beverage Company, Plaintiffs asserted that for "more than 50 years the owners of lots within the Recker Heights Subdivision, and their predecessors in title, have, individually and collectively, slept on their rights to enforce the 'residential usage only' restriction against the successive owners of Lots 7 and 8 who have, for that entire period of time, conducted open and obvious commercial activities" on those lots.

{¶ 15}  Regarding the value of the restrictive covenant to the remaining lots in the subdivision, Plaintiffs asserted that "*value*, like *beauty*, is in the eye of the beholder, and

as will appear from the contending affidavits, * * * there are different criteria and/or metrics by which to determine the value of the lots in the Recker Heights Subdivision." Plaintiffs asserted that the value of the lots "would have an exponentially greater market value without the restriction." Plaintiffs urged comparison of the value of the lots at the time the restriction was created, when the area was rural in nature, to the present situation and the effect of the surrounding commercial development. Plaintiffs directed the court's attention to *Olberding v. Smith*, 34 Ohio Law Abs. 84, 34 N.E.2d 296 (1st Dist. 1934), and *Hayslett v. Shell Petroleum Corp.*, 38 Ohio App.164, 175 N.E. 888 (8th Dist. 1930).

{¶ 16} Robert Stephan's attached affidavit provides that he has resided on his property his entire life, located on 1035 West U.S. Route 36, in Piqua, having "acquired the same from his parents." He averred that "when he was a young boy, the Recker Heights area was in the early stages of development as a residential plat and the surrounding area was predominantly agrarian in nature; Route 36 was a two-lane country road and I-75 did not exist and could not have possibly been foreseen." Stephan asserts that "during the period of his parents' ownership, the State of Ohio took title, for highway purposes, to a strip of ground off the southern end of former lot 5, and a portion off both the southern and eastern sides of lot 6." Stephan asserts that as a result, "he no longer has direct access to U.S. Route 36 and said real estate has been 'fenced off' from, and no longer 'fronts' on, said road. His sole means of ingress and egress to and from his lots is via an easement to Looney Road created by the State." Stephan asserts that his lots are "almost directly adjacent to the northbound entrance ramp to Interstate 75 from U.S. Route 36."

{¶ 17} Stephan asserted that as part of a " 'beautification project,' " fencing from

the State right-of-way has been removed, and the City of Piqua "is in the process of installing a series of tall, prominent and bright lights along said right-of-way." According to Stephan, as a result of the removal of the fencing, "his property has been continuously littered with paper trash blown in from the Mall area directly across Looney [R]oad, as well as trash of all kinds from passersby. In addition, both pedestrian and biker traffic now routinely traverse the corner of his property as a shortcut from Looney Road to U.S. Route 36, leaving ruts in the ground and trash items throughout the area." Stephan averred that vehicular traffic, with nighttime headlights at the intersection of Route 36 and Looney Road, "is intense" and "has become an impediment to his quiet enjoyment of his residence." Finally, Stephan averred that surface water run-off "has caused occasional flooding of his property and has impeded his ability to properly maintain his lawn areas."

{¶ 18} The attached affidavit of Robert and Sheila Bowman provides that they reside at 8060 Looney Road, on .78 of an acre between Stephan's property "and that owned by Robin and Julie Alexander (the property formerly utilized by the Hunt Beverage Plant and currently utilized as a Winans Fine Chocolates & Coffee drive-thru coffee shop and beauty salon as two of a potential four spaces)." The Bowmans asserted that despite maintaining their home, "the same has diminished in value by reason of the intensive commercialization of the neighborhood." The Bowmans aver that light from "four 4000-watt fixtures" located at Winans shines directly into their bedroom and bathroom windows, and that the drive-thru customers "constantly drive across their adjacent circular driveway." They averred that their "back-porch has become virtually unusable because of the 4000-watt lights and the customer overflow from the coffee drive-thru and the beauty shop." The Bowmans aver that commercial "traffic from the

huge shopping Mall, located across Looney Road exits the Mall area directly opposite their residence and the headlights of exiting shoppers shine directly into their living room and front door area." The Bowmans aver that the restrictive covenant is of no value to them or "the other lot owners within their neighborhood, especially those which front on Looney Road or the East side of Woodlawn Drive."

{¶ 19} Greg D. Lowery's affidavit provides that he owns a lot in the Recker Heights Subdivision located at 8200 Looney Road, "just 3 lots North of the old Hunt Beverage Company Building." Lowery avers that he initially intended to use the lot for occasional residential purposes, and that he "has since deemed the same to be unsuitable for that purpose and currently utilizes the property as a rental." He avers that the residential covenant is no longer of value to lot owners in the subdivision.

{¶ 20} David B. Corfman avers that he resides at 8245 Woodlawn Drive, Piqua, and that he owns "Lot Numbered 22 and the West half of Lot Numbered 21 in the Recker Heights Subdivision, which property is located at the Southeast corner of the intersection of Woodlawn Drive and Schulz Drive." According to Corfman, "during his occupancy of said property, and upon the occurrence of rainstorm activity, his basement has been repeatedly flooded by storm waters backing up through his basement drain at a rate far above that which his sump pump could evacuate," costing him in excess of $10,000.00. Corfman avers that he "has reason to believe that excessive storm waters flowing from the Mall areas across Looney [R]oad through an inadequate drainage tile have been forced upstream into his own drainage system." Corfman avers that as a result of the flooding, he "has had serious outcroppings of mold throughout his residence." He avers that the restrictive covenant is of no value to him "or the other lots and owners within his

immediate neighborhood, all of which have had similar problems with surface and flood waters and mold."

{¶ 21} Scott and Norman Seipel and Gaye Cavender aver that they, along with their brother Brian, own lots 32, 33 and 34 of the subdivision, "having inherited the same from their mother, Faye Ellen Seipel, who died on May 8, 2013." The four descendants of Faye Seipel do not reside in the subdivision, according to the affidavit. Affiants aver that their three lots "are situated at the southern end of the terminated Woodlawn Drive and lie directly adjacent to the lots owned by Plaintiffs [Stephan, the Bowmans,] and the lots owned by Defendants Robin and Julia Alexander (which has been utilized for business purposes for some 60 years.)." According to Affiants, their mother, "had resisted prior attempts to invalidate" the restrictive covenant, but "had recently expressed her opinion that due to the changes in circumstances pertaining to the immediate neighborhood and the intensive commercialization of the surrounding area, the restriction had become an anachronism and was no longer a benefit to the residents" of the subdivision. The affiants aver that they "concur with their mother's expressed opinions."

{¶ 22} Elmer Deitering avers that his residence is not in the subdivision, but that he owns "an undivided one-half interest in Lot No. 7568 * * * which lot was initially part of Lot 4" of the subdivision. Deitering avers that his lot is "located on the East side of Woodlawn Drive, on the South end of said Woodlawn Drive, directly adjacent to the southern terminus thereof, and adjacent to the lots" owned by Stephan. Deitering avers that there "are no buildings or other improvements on said lot nor any intention to make any improvements thereon because of the location of the lot in a portion of said subdivision where the homes have been run-down, poorly maintained and [are] of little or

no market value." Deitering avers that the restrictive covenant was of no value "to me or most of the other lot-owners in the immediate area surrounding my property."

**{¶ 23}** Plaintiffs responded to Defendants' motion for summary judgment on December 2, 2013, and Defendants responded to Plaintiffs' summary judgment motion on January 8, 2014. Plaintiffs replied to Defendants' response, and "Defendants' supplemental Memorandum in Support of Motion for Summary Judgment" was filed. Plaintiffs filed a response on February 27, 2014.

**{¶ 24}** Prior to addressing the merits of the summary judgment motions, the trial court by way of background reviewed the prior litigation[1] involving the Recker Heights Subdivision as follows:

> The pending action is the fifth in a series of legal proceedings over the restrictive covenants sought to be invalidated by plaintiffs. In each case, the plaintiff was Robert L. Stephan or a predecessor in interest to Mr. Stephan. In *Glassburn v. Fair,* Case No. 38286, (1958), the court held the restrictions were valid and were "operative upon all lots in the Subdivision." In *Glassburn v. Fair*, Case No. 42056, (1965), the court again upheld the validity of the restrictive covenants and found them binding upon the lots owned by the plaintiffs and their successors in interest. The court also found the covenants enforceable by all lot owners in the subdivision. In an appeal by the plaintiff, the Court of Appeals held that the issue regarding the existence of a uniform plan "was resolved in the former suit and cannot

---

[1] We note that copies of the prior decisions cited by the trial court are attached to Defendants' Motion for Summary Judgment.

properly be raised again in the present action."

{¶ 25}   The trial court noted the following analysis from this Court's prior decision on the issue of whether the character of the land in the area of the subdivision has changed to such a degree as to render the covenants unenforceable:

In this regard, the record reflects substantial evidence that there has been a gradual development of the general area for business use. The evidence also discloses that the installation of four-lane highways near the lots owned by the plaintiff, particularly Lot No. 3, has reduced their value for residential use.   However, the bulk of the lots contained in the subdivision continue to be suitable for and devoted to residential purposes, and there appears to be little doubt that the general plan of the original grantors was that all the lot owners were to be beneficiaries of the restrictions.   See *Berger v. Van Sweringen Co.* (1966), 6 Ohio St.2d 100, 216 N.E.2d 54.

Ordinarily, where a covenant is still of considerable value to the other lot owners, relief from such a restriction is not available. [*Brown v. Huber*] (1909), 80 Ohio St.183, 88 N.E.2d 322; [*Winfrey v. Marks*] (1968), 14 Ohio App.2d 127, 237 N.E.2d 324; [*Romig v. Modest*] (1956), 102 Ohio App. 225, 142 N.E.2d 555. * * *

*Glassburn v. Fair*, 24 Ohio App.2d 40, 42, 263 N.E.2d 570 (2d Dist. 1970).

{¶ 26} The trial court continued as follows:

*Robert Stephan, et al v. Patricia Hartzel, et al,* Case No. 80-1, (1980), was an action in which plaintiffs were the owners of lots 5 and 6 in the subdivision and the defendants were ". . . all the prior grantors, mesne

conveyancers, as well as their spouses, devisees at law, and next of kin, with regard only to Lots No. 5 & 6. None of the owners of the lots within the Subdivision as of the filing of this action in 1980 were named as defendants in this suit." [quoting the Stipulation of Counsel]. Service was by publication and the court entered a default judgment declaring the restrictive covenants to be invalid and unenforceable.

*Robert D. Stephan, et al v. Phyllis J. Steiner, et al,* Case No. 86-152 (1986) was a declaratory judgment action similar to the 1980 case, except that all property owners in the subdivision were named as defendants (as was the case in prior *Glassburn* cases in 1958 and 1965). The defendants moved for summary judgment in the 1986 case, asserting that, despite the substantial commercial development around the subdivision since its initial platting in 1952, the residential character within the subdivision had remained unchanged. The defendants also asserted that the changes outside of the subdivision had no relevance to the continuing validity and enforceability of the restrictive covenants. [citing the Stipulation of Counsel].

In his decision in the 1986 case, Judge Kistler noted that when plaintiffs and defendants had purchased their parcels of real estate, there was a commercial enterprise then known as Hunt Beverage which operated within the subdivision on its eastern border on Looney Road. The parties were aware of its existence when they purchased their property. Judge Kistler also found that the commercial development which occurred in the vicinity of the subdivision could not have been contemplated by the original

grantors, and that the lot owners acquired their property with knowledge of and in reliance upon the restrictive covenants. In upholding the validity and enforceability of the restrictive covenants, the court held that there had not been such a change in the character of the subdivision as to make it no longer suitable for residential use or to defeat the original purpose of the restrictive covenants.

Judge Kistler also ruled that the issue as to a general plan of development is res judicata, and that plaintiffs could prevail *only if* they could show that because of changed conditions the restrictions had become generally valueless to the lot owners. * * *

**{¶ 27}** The trial court noted that Judge Kistler made the following conclusions of law in the 1986 case:

• Where a covenant or restriction is still of substantial value to the dominant lots notwithstanding the changed condition of the neighborhood in which the lot is situated, a court of equity will restrain its violation.

• It is not sufficient that plaintiffs establish that their properties would have a greater value or could be used more extensively if the burden of the restrictions were removed, or that plaintiffs establish that said properties have a diminished value for residential purposes because of the restrictions.

• The crucial finding is the value of the restrictions to the other lot owners in the subdivision. In order for the plaintiffs to prevail, they must show by clear and convincing evidence that there has been substantial change in the neighborhood to such an extent that the restrictive covenants have *lost*

*their value* to the other lot owners.

• The restrictive covenants continue to be of substantial value to the lot owners in maintaining the residential character of the subdivision and all owners of lots within the subdivision were entitled to enforce the covenants. [citing Stipulation of Counsel].

{¶ 28} In addressing Plaintiffs' "First Claim," the court noted that "Ohio courts consistently have upheld that a court of equity will not restrain the enforcement of a restrictive covenant were the covenant is still of substantial value." The court noted that as "the persons asserting the invalidity of the restrictive covenant, plaintiffs bear the burden of setting forth facts which could demonstrate by clear and convincing evidence that the covenants have 'lost their value' to the other lot owners." The court noted that "the passage of a zoning ordinance has no effect on existing restrictions confining land to residential use," and that where "there has been no actual change in the residential character of the lots subject to a valid restrictive covenant, a zoning change allowing commercial uses does not nullify a covenant permitting only residential uses."

{¶ 29} The following stipulation was significant to the court: " '[m]ost, but not all, of the foregoing changes have occurred prior to this Court's Decisions and Orders in previous cases filed by the Plaintiff or by his predecessors in title.' " The court noted, "[m]ore significantly, the plaintiffs do not point to any changes or effects within the subdivision which result from the post 1987 changes in the surrounding commercial environment." The court noted the additional stipulation as follows: " 'Also, **the subdivision itself remains residential** and has **not changed in character** since the prior decisions establishing and upholding the restrictive covenants for the subdivision.' "

{¶ 30} The court found that "Defendants have also supported their motion for summary judgment with affidavits that demonstrate that the residential nature of the subdivision has not changed since the prior court decision.   It is undisputed that, since the prior hearing, four new homes have been built in the subdivision and that many of the residents have made improvements to their homes."

{¶ 31} The court noted that, while the Plaintiffs argued that the restrictive covenant "cannot conceivably be of any substantial value to the defendants," the cases upon which plaintiffs relied, namely *Olberding v. Smith*, and *Hayslett v. Shell Petroleum Corp.*, did not involve restrictive covenants "which were part of a uniform plan for the development of a subdivision, a fact which limits their applicability to the determination of the value of the restrictions in the case at bar."   The court noted that Plaintiffs did not provide "any evidence which demonstrates that the restrictive covenants have 'no substantial value' or are 'valueless' to the other lot owners."

{¶ 32} In addressing Plaintiffs' "Second Claim," the court noted that in *Stephan v. Hartzell*, Case No. 80-1, Robert Stephan "obtained declaratory relief by default against his predecessors in title.   The case did not involve any of the defendants herein or any of their predecessors in interest.   The defendants assert, and the plaintiffs do not dispute, that Case No. 80-1 does not invalidate the restrictive covenants or their enforceability by the defendants."   The court noted that *Stephan v. Hartzell*, Case No. 80-1, further does not "disturb the prior rulings which found the covenants to be part of a uniform plan for a subdivision."

{¶ 33} In addressing the plaintiffs' "Third Claim," the court noted that the existence of the Hunt Beverage Company, "on lots facing Looney Road on the eastern edge of the

Subdivision," was addressed in *Stephan v. Steiner*. The court noted as follows:

Although the Hunt Beverage Company has ceased to exist, Lots 7 and 8 have been continuously used for commercial purposes. Current and anticipated uses for the lots include a beauty shop and a drive-through coffee shop. The plaintiffs do not assert in the complaint or the motion for summary judgment, that the post 1987 changes in the uses of Lots 7 and 8 have had any effect on the residential character of the subdivision or of the value of the restrictions to the lot owners in the subdivision.

In the motion for summary judgment and in the ensuing reply filed by plaintiffs, it is argued that the continued existence of a commercial enterprise on lots 7 and 8 in the subdivision constitutes "a waiver and acquiescence" of the right of the defendants to enforce the restrictive covenants. The plaintiffs cite *Santora v. Schalabba,* [8th Dist. Cuyahoga No. 80291, 2002-Ohio-2756], which acknowledges that a restrictive covenant can become unenforceable when there has been a waiver or abandonment of the restrictions. In *Santora*, the court refused to uphold a restrictive covenant which prohibited the erection of fences on the residential lots in the subdivision where twenty percent of the homes in the subdivision had constructed fences. The court found that a waiver of the restriction occurred because the restriction had become valueless to the property owners.

Plaintiffs also cite *Romig v. Modest*, [102 Ohio App. 225, 142 N.E.2d 555 (2d Dist. 1956)], which is also cited by the *Santora* court. In *Romig*,

the court was also faced with a restriction concerning fences in a neighborhood. The court framed the issue in these terms: "Did erection of the fences of various descriptions on at least 14 lots out of a total of 53 lots on the plat constitute a waiver or an abandonment of the restriction?" The court then analyzed the standard to be applied to answer the question:

The test applied is *whether the character of the neighborhood has been changed by reason of the failure to object to previous violations.* Applying the test to the facts in the instant case, we are required to determine whether the erection of the fences of various kinds *changed the character of the neighborhood*. (Emphasis added).

{¶ 34} The trial court noted that this Court "found that the erection of a few side line fences did not render the enforcement of the restriction of no substantial value to the property owners," and that " '[w]here such restriction is still of substantial value to the dominant estate, the plaintiffs herein, a court of equity will restrain its violation.' " The court noted that Plaintiffs failed to address the test set forth in the cases they cited, namely "whether the character of the neighborhood has been changed by the failure to object to the commercial use of lots 7 and 8." The court found that the stipulation regarding the unchanged character of the subdivision "demonstrates that, since the prior court rulings, the neighborhood has retained its residential character."

{¶ 35} The trial court concluded that the Defendants rely upon the covenants to maintain the residential character of the subdivision, and that with the exception of the commercial development on Lots 7 and 8, there has been no further commercial development in the subdivision. The court noted that many homeowners improved their

residences, and that four new homes were built. The court found that there "has not been such a change in the character in the subdivision as to no longer make it suitable for residential use," or to defeat the purpose of the covenants. The court found that the Defendants did not waive their right to enforce the covenants, and that the covenants "have been and continue to be of substantial value to the defendants and all of the lot owners in the Recker Heights subdivision."

{¶ 36} Appellants assert five assignments of error herein, the first two of which we will consider together. They are as follows:

THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT IN THE ABSENCE OF ANY EVIDENCE THAT THE DEFENDANTS HAVE CONTINUED TO RELY UPON THE RESTRICTIVE COVENANTS TO INSURE THAT THE SUBDIVISION WOULD REMAIN RESIDENTIAL IN CHARACTER.

And,

THE TRIAL COURT ERRED IN FINDING THAT THE RESTRICTIVE COVENANTS HAVE BEEN AND CONTINUE TO BE OF SUBSTANTIAL VALUE TO THE DEFENDANTS AND ALL OF THE LOT OWNERS IN THE RECKER HEIGHTS SUBDIVISION.

{¶ 37} Plaintiffs again rely upon the opinion of David Hartt and assert that his opinion is "dispositive of the issue." Plaintiffs assert that "there are different criteria and/or metrics by which to determine the value of the lots in the Recker Subdivision." They assert that the lots would have greater market value in the absence of the restriction,

given the commercial development around the subdivision. According to Plaintiffs, the lots were initially "rural and/or suburban in nature, with minimal traffic and surrounded by undeveloped farm land; currently, they are subject to heavy traffic, noise, highway and supermarket lighting around the clock, excessive surface run-off, and dire potentials because of their limited access * * *." Plaintiffs assert that several of the residences have deteriorated and been abandoned. Plaintiffs assert that while Defendants argue that the layout of the subdivision insulates them from noise and traffic, in fact it is the "devalued lots" owned by Plaintiffs that shield the properties of the Defendants and "act as a protective buffer to the residential value of their own properties." Plaintiffs dispute that the covenants are of substantial value to all of the lot owners in the subdivision. Plaintiffs direct our attention to *Olberding* and *Hayslett*.

{¶ 38} Defendants respond that "some of the defendants in this case, and many of their predecessors in title, have opposed the action of Plaintiff Stephan, and his predecessors in title, in three separate lawsuits filed in 1958, in 1965, and in 1986, the substance of which has been well documented in the motion and stipulations filed herein." Defendants assert that Plaintiffs "have not presented any evidence that the restrictive [covenant] as to residential use is no longer of value to the defendants who have submitted their affidavits, all of which expressly state that each lot owner strongly believes that 'if the restrictive covenants are not upheld, we will no longer have the peaceful and quiet environment we now have.' "

{¶ 39} Regarding the opinion of David Hartt, Defendants assert that the trial court "found that the passage of a zoning ordinance has no effect on existing restrictions confining land to residential use," and that Hartt "could not and did not explain why the

restriction is of no value to the defendants, who are the dominant lot owners in this matter." Regarding Plaintiffs' argument that "as it pertains to real estate, value, like beauty, is in the eye of the beholder," Defendants assert that such an assertion "is certainly not a legal argument and the statement is controverted by the actual affidavits signed by twenty-seven defendants, being the owners of twenty residential parcels in the subdivision. The value of the residential restriction is real and tangible to those persons and families residing in those homes." Defendants direct our attention to Exhibit H of their motion for summary judgment, which is an "aerial photograph of the subdivision as obtained from the Miami County Engineer's Tax Map Office, showing a residential subdivision with limited access streets, single family homes, trees, and green space. * * * The plat is devoid of signs of commercialization (except for the one parcel with the coffee shop and salon)."

{¶ 40} In Reply, Plaintiffs assert it "cannot fail to appear that the central issue in the case concerns the matter of the continuing value of the restriction to the other lot owners within the plat. And that issue is undeniably a question of disputed fact."

{¶ 41} As this Court has previously noted:

When reviewing a summary judgment, an appellate court conducts a de novo review. *Village of Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "De Novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Harris v. Dayton Power & Light Co.*, 2d Dist. Montgomery No. 25636, 2013–Ohio–5234, ¶ 11 (quoting *Brewer v. Cleveland City Schools*

*Bd. [o]f Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997) (citing *Dupler v. Mansfield Journal Co* ., 64 Ohio St.2d 116, 413 N.E.2d 1187 (1980)). Therefore, the trial court's decision is not granted any deference by the reviewing appellate court. *Brown v. Scioto Cty. Bd. Of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

Civ. R. 56 defines the standard to be applied when determining whether a summary judgment should be granted. *Todd Dev. Co., Inc. v. Morgan*, 116 Ohio St.3d 461, 463, 880 N.E.2d 88 (2008). Summary judgment is proper when the trial court finds: "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the Motion for Summary Judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Fortune v. Fortune*, 2d Dist. Greene No. 90–CA–96, 1991 WL 70721, *1 (May 3, 1991) (quoting *Harless v. Willis Day Warehouse Co.*, 54 Ohio St.2d 64, 67, 375 N.E.2d 45 (1978)). The initial burden is on the moving party to show that there is no genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292–93, 662 N.E.2d 264 (1996). Once a moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dotson v. Freight Rite, Inc.*, 2d Dist. Montgomery No. 25495, 2013–Ohio–3272, ¶ 41 (citation omitted).

*Cincinnati Ins. Co. v. Greenmont Mut. Hous. Corp.*, 2d Dist. Montgomery No. 25830,

2014-Ohio-1973, ¶ 17-18.

{¶ 42} Regarding Plaintiffs' reliance upon Hartt's opinion, as previously noted, "the zoning of land for business has no effect on existing restrictions confining the use of land to residential purposes, which restrictions arise from private deeds or private agreements." *Willott v. Village of Beachwood*, 175 Ohio St. 557, 197 N.E.2d 201 (1964). As this Court noted in *Glassburn v. Fair*, 24 Ohio App.2d 40, 263 N.E.2d 570 (2d Dist. 1970), "where a covenant is still of considerable value to the other lot owners, relief from such a restriction is not available. * * * ." *Id.*, 24 Ohio App.2d at 42. "The fact that the servient estate could be used more extensively if it were free of the burden, or would have greater value, is not a basis for removing the burden." *Kokenge v. Whetstone*, 60 Ohio App.302, 20 N.E.2d 965 (1st Dist. 1938).

{¶ 43} We note that of the affidavits submitted by Plaintiffs, only Stephan, the Bowmans, and Corfman aver that they reside in the subdivision. Contrary to Plaintiffs' assertion, Defendants submitted substantial evidence in the form of multiple detailed affidavits. The affiants aver that in maintaining and improving their homes, they have continued to rely upon the restrictive covenant to insure that the Recker Heights Subdivision remains residential, and that the restrictive covenant is accordingly of substantial value to them. Exhibit H to the Defendants' summary judgment motion, the aerial photograph of the subdivision, is consistent with the Defendants' description of the area as primarily residential, with green space and vegetation.

{¶ 44} Finally, we conclude that Plaintiff's reliance upon *Olberding* and *Hayslett* is misplaced, in that the facts in those cases are dissimilar to those herein. In *Olberding*, the defendant sought to erect a building for business use on his lot, "the lot against which

the original owner for a consideration placed a restriction against use for business purpose." *Id.*, 34 N.E.2d at 297. The plaintiff relied upon the restrictive covenant prohibiting such use, and the First District determined that while the "locality involved here originally was very thinly settled," today "it is almost entirely devoted to business purposes," and the "changes have all occurred since making the original covenant. It is obvious that the only 'value' remaining in the holder of the restrictive covenant is one of duress, that is, to compel the payment of a consideration for its release." *Id.*, at 298. It was significant to the court that "[t]his is not a case involving a general scheme of limitation applicable to a subdivision * * *", as is the matter herein. *Id.*, at 297; *Glassburn v. Fair*, 24 Ohio App.2d at 41 (finding the Recker Heights Subdivision lots are part of a uniform plan for the development of the subdivision, and "this issue was resolved in the former suit and cannot properly be raised again in the present action. * * * It became res judicata.* * *.") In other words, the value to the Defendants herein is not "one of duress" but is one to be protected.

{¶ 45} In *Hayslett*, the plaintiff claimed that the defendant had constructive notice of a restriction limiting the use of his lot to single family residences only, and the Eighth District determined as follows:

> We hold that, because there was no general plan which affected all property in the allotment alike, and because there were no restrictions written in the recorded plat, and none in the deed to defendants, and because they had no notice either actual or constructive of any restrictions affecting the Euclid Avenue frontage of the Sheldon allotment, or of any such plan which may have been in the mind of the original allotment owner,

the alleged restrictions have no binding effect on the defendants.

*Id.*, 38 Ohio App. at 168-69. Like *Oberding*, *Hayslett* did not involve a general scheme applicable to all property involved, and the defendants therein lacked notice of the restriction; *Hayslett* does not support the Plaintiffs' argument.

**{¶ 46}** Having construed the evidence in a light most favorable to Plaintiffs, we conclude that the trial court did not err in granting Defendants' motion for summary judgment, since no genuine issue of material fact remains regarding the substantial value of the restrictive covenant to Defendants. The first and second assignments of error are overruled.

**{¶ 47}** Plaintiffs' third assigned error is as follows:

THE TRIAL COURT ERRED IN FINDING THAT THERE HAS NOT BEEN SUCH A CHANGE IN THE CHARACTER OF THE SUBDIVISON AS TO MAKE IT NO LONGER SUITABLE FOR RESIDENTIAL USE.

**{¶ 48}** Plaintiffs assert that Defendants in their affidavits "have described their respective area within the subdivision in glowing terms, i.e. secluded, private, peaceful and quiet; removal of the restriction will not change their circumstances in the slightest; they can simply remain in *status quo.*" Plaintiffs point to the affidavits attached to their motion for summary judgment and assert that in contrast, there has been a "total erosion of the values of their properties." Plaintiffs assert as follows:

Counsel for Defendants have argued that none of the changes wrought by the continuing commercialization of the area have occurred within the subdivision itself. That argument ignores the fact that a portion of the subdivision has been taken over for highway purposes, that access to

the Subdivision via Woodlawn Drive has been terminated, that direct access to State Route 36 has been foreclosed, that surface water runoff from the East Mall directly across Looney Road has caused flooding of lots within the subdivision, that intense lighting from the adjacent commercial areas and from the city's newly installed highway lights has blighted the homes in the immediate area – together with the myriad other conditions described in the affidavits of Plaintiff lot owners. All of such conditions and changes exist *within the subdivision.*

{¶ 49} Regarding the termination of access to the subdivision via Woodlawn Drive and the lack of direct access from the subdivision to U.S. 36, Defendants respond that "those changes were made in the 1970s and were considered in the <u>Stephan v. Steiner</u> case. Defendants respond that such changes to those streets have had beneficial impact on the character of the subdivision, by limiting through traffic and eliminating some of the excess noise that would otherwise occur."

{¶ 50} In addition to the Defendants' affidavits, we note the parties' Stipulation of Counsel that "for a period of at least sixty years, changes of circumstance concerning the area *surrounding* Plaintiffs' lots and all other lots contained within the subdivision have occurred." As Defendants assert, in *Stephan v. Steiner,* the trial court made the following findings of fact regarding the lack of access from the subdivision to U.S. 36 and the termination of Woodlawn Drive within the subdivision:

* * *

8. Plaintiffs' parcels of real property lie on the southern edge of Recker Heights Subdivision along U.S. Route 36.

9. Because of improvements made to U.S. Route 36 between 1969 and the present, access to Plaintiff's property is from Looney Road, which runs north and south on the eastern edge of Recker Heights Subdivision.

10. In order to have access to his home, Plaintiff, Robert D. Stephan must maintain a driveway, provided by the State of Ohio, which runs across the property of his mother, Margaret C. Stephan, to Looney Road on the East.

11. Because of the improvements made to U.S. Route 36, Woodlawn Drive, a public thoroughfare, running north and south through the center of Recker Heights Subdivision was terminated at its southern edge, thereby preventing through traffic from going through the subdivision.

{¶ 51} Based upon the foregoing, and construing the evidence in a light most favorable to Plaintiffs, we conclude that the trial court did not err in finding that there has not been such a change in the character of the subdivision as to make it no longer suitable for residential use. Accordingly, in the absence of a genuine issue of material fact as to the ongoing residential character of the subdivision, Plaintiffs' third assigned error is overruled.

{¶ 52} Plaintiffs' fourth assignment of error is as follows:

THE TRIAL COURT ERRED IN FINDING THAT THE DEFENDANTS HAVE NOT WAVIED THEIR RIGHT TO ENFORCE THE RESTRICTIVE COVENANTS.

{¶ 53} Plaintiffs argue, quoting the Stipulation of Counsel, that on "February 19, 2013, just after the filing of the Complaint in this action, [Lots No. 7 and 8 were] annexed

to the City of Piqua 'in response to OEPA orders concerning septic system deficiencies. . .' and zoned 'B General Business Zoning.' " Plaintiffs assert that "the owners of said Lots 7 and 8 have re-habilitated and remodeled the same to accommodate a Winans Fine Chocolates & Coffee drive thru coffee shop, a beauty salon and two other storefronts." According to Plaintiffs, no one "ever objected or even complained about those successive – and continuing – commercial usages of those Lots 7 and 8, and while prior decisions of this Court have alluded to that fact, there has been no discussion or question as to whether the acquiescence by any or all of the other lot owners constitutes a waiver" of the restrictive covenant or "an estoppel to resist the judicial invalidation of the 'residential use only' restriction." Plaintiffs assert that the restriction denies them, and especially Stephan, whose lots abut Lots 7 and 8, equal protection, and that "fairness would seem to mandate judicial intervention to vouchsafe to a plaintiff the same right to utilize his own property in the same manner as his next-door-neighbor." Plaintiffs assert that Defendants have slept on their rights.

{¶ 54} Defendants respond that the parties "stipulated to the fact that when the parties to this action, and/or their predecessors in title, acquired their respective lots, there existed a commercial building know[n] and operated as the Hunt Beverage Company." Defendants note that the "existence of the building was acknowledged by the Stephan v. Steiner court" and the court "held that such use did not represent such a change in the neighborhood as to cause the covenants to have lost their value to Defendants." Defendants assert that the "renovation and aesthetic enhancements by the owners of the new establishment [on Lots 7 and 8] are an improvement to the subdivision and do not detract from the market value of defendants' residences." According to Defendants, the

Plaintiffs bear the burden of showing waiver, and the "Plaintiffs only established that * * * there was a continuous commercial use of those lots." Pursuant to *Santora* and *Romig*, Defendants assert that the Plaintiffs "do not provide any evidence of *changes in the character of the subdivision* that resulted from the failure to enforce a violation of the covenant as to those two lots."

**{¶ 55}** "In Ohio, restrictive covenants become unenforceable when there has been a waiver or abandonment of the restrictions. *Romig v. Modest* (1956), 102 Ohio App. 225, 142 N.E.2d 555." *Santora*, 2002-Ohio-2756 at ¶ 10. "The test applied is whether the character of the neighborhood has been changed by reason of the failure to object to previous violations." *Romig*, 102 Ohio App. at 229.

**{¶ 56}** As Defendants assert, the trial court addressed the commercial usage of Lots 7 and 8 in *Stephan v. Steiner* in its factual findings. The court found that at "the time when Plaintiffs and Defendants purchased their parcels of real estate, there existed in Recker Heights Subdivision on Looney Road, a commercial enterprise known as Hunt Beverage, and each of the Defendants who testified during the trial of this cause purchased his or her property with full knowledge of its existence."

**{¶ 57}** Construing the evidence in a light most favorable to Plaintiffs, and having determined above that the restrictive covenant is still of value to the Defendants, and that the residential character of the subdivision has not changed, we conclude that no genuine issue of material fact remains, and that Defendants have not waived their right to enforce the restrictive covenant. Plaintiffs' fourth assigned error is overruled.

**{¶ 58}** Plaintiffs' fifth assigned error is as follows:

THE TRIAL COURT'S REFUSAL TO DECLARE THE

RESTRICTION INVALID EFFECTIVELY MAKES THE PLAINTIFFS HOSTAGE TO THE DEFENDANTS.

**{¶ 59}** Plaintiffs again direct our attention to *Olberding*. Based upon the foregoing, we conclude that Plaintiffs' fifth assigned error lacks merit; there is still a substantial value in the restriction to the Defendants, the residential character of the subdivision is unchanged, and the Defendants did not waive their right to enforce the covenant. In the absence of a genuine issue of material fact, Plaintiffs' fifth assigned error is overruled, and the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and WELBAUM, J., concur.

Copies mailed to:

John E. Fulker
Michael E. Gutmann
Frank J. Patrizio
Hon. Christopher Gee